2022 IL App (1st) 210441
No. 1-21-0441
Opinion filed July 25, 2022

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BRYTON PROPERTIES, LLC, ADDISON SERIES, as Owners of the Premises Located at 2620 W. Addison, Chicago, IL, and BRYTON PROPERTIES, LLC, ROCKWELL SERIES, as Owners of the Premises Located at 2633 W. Addison, Chicago, IL, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County.<br><br>Nos. 20-M-1705090, 20-M-1705091 |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | The Honorable Sondra Nicole Denmark, |
| KIDS' WORK CHICAGO, INC., | ) ) | Judge, presiding. |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1     Kids' Work Chicago, Inc. (Kids' Work), leased property from Bryton Properties, LLC, Addison Series, and Bryton Properties, LLC, Rockwell Series (collectively referred to as Bryton LLCs), to operate a daycare center. In March 2020, Kids' Work stopped paying rent after the COVID-19 pandemic forced it to close temporarily. In May 2020, Kids' Work reopened at reduced capacity but did not resume rent payments, contending the pandemic

constituted a "casualty" under the lease, exempting it from paying rent while closed and from then on paying rent at a reduced rate due to it operating at reduced capacity.

¶ 2    The Bryton LLCs filed a complaint to evict Kids' Work and a motion for use and occupancy payments. Shortly after the trial began, Kids' Work moved to dismiss the complaint, arguing the Bryton LLCs lacked standing because they conveyed the premises to two Delaware LLCs years earlier without reserving the right to possession or rents. The trial court denied the motion, finding that Kids' Work waived the standing argument by failing to raise it as an affirmative defense. Kids' Work filed a motion to reconsider, arguing, in part, that the trial court lacked subject-matter jurisdiction since the Bryton LLCs lacked standing. The trial court denied that motion as well.

¶ 3    While the motion to dismiss was pending, the Bryton LLCs renewed their motion for use and occupancy payments, which the trial court granted. The court ordered Kids' Work to pay $201,356 for past use and occupancy and then $40,507 monthly. Kids' Work refused to comply with the order, and when its owner and president failed to appear to explain why, the trial court held Kids' Work in indirect civil contempt and sanctioned it $120,000, or about half of the use and occupancy payments owed.

¶ 4    Kids' Work appeals under Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016), contending it was not obligated to comply with the use and occupancy order, as (i) the Bryton LLCs did not have title to the properties when it filed its complaint and lacked standing to seek possession or rent, (ii) the trial court did not have subject-matter jurisdiction because the Bryton LLCs lacked standing, and (iii) the trial court failed to hold an evidentiary hearing before entering the use and occupancy order. Alternatively, Kids' Work contends its refusal to

comply with the use and occupancy order was a "friendly contempt" made in good faith to appeal what it believed to be either a clear error or a matter of first impression.

¶ 5     We affirm. The trial court did not err in ordering Kids' Work to make use and occupancy payments or in holding Kids' Work in contempt when it refused to comply. Regarding the trial court's rulings on Kids' Work's motion to dismiss and motion to reconsider, those rulings do not directly concern the propriety of the finding of contempt, and we do not have jurisdiction over them. We hold, however, that Kids' Work acted in good faith to obtain appellate review, so we vacate the contempt order and sanction.

¶ 6                                          Background

¶ 7     In 2008, Kids' Work entered into a lease with Bryton Properties, LLC, Addison Series, to operate a daycare center at 2620 West Addison. In 2011, Kids' Work signed a second lease with a related entity, Bryton Properties, LLC, Rockwell Series, for additional space at 2633 West Addison. In 2014, the Bryton LLCs refinanced the two properties. To obtain the loan, the lender required they form two Delaware limited liability companies—Bryton Addison, LLC, and Bryton Rockwell, LLC (collectively referred to as Delaware LLCs)—and convey them title to the premises. At oral argument, Kids' Work's attorney conceded that Kids' Work paid rent to the Delaware LLCs after the conveyance.

¶ 8     In March 2020, following the governor's stay-at-home orders due to the COVID-19 pandemic, Kids' Work ceased daycare operations and stopped paying rent on both properties. In mid-May 2020, Kids' Work reopened at a reduced capacity, providing daycare services for essential workers at 2633 West Addison. Despite reopening, Kids' Work did not resume making rent payments. Instead, Kids' Work asserted the pandemic qualified as a "casualty"

under the leases, exempting it from paying rent while closed for business and permitting reduced rent after it reopened at a reduced capacity.

¶ 9 The Bryton LLCs gave Kids' Work a five-day notice asking for $107,240.54 in rent and expenses for April and May 2020 and informing Kids' Work the lease could be terminated if it did not pay the rent. Kids' Work continued to refuse, and when negotiations fell through, the Bryton LLCs filed two verified forcible entry and detainer complaints alleging Kids' Work breached the leases and seeking possession and damages. The complaints, later consolidated, asserted that Kids' Work failed to cure the default within five days of the notice to quit and that "the Lease has been terminated and Kids' Work unlawfully holds possession of the Premises." Kids' Work filed several affirmative defenses and counterclaims, none involving standing, which the trial court dismissed.

¶ 10 The Bryton LLCs filed a motion for use and occupancy payments, asking Kids' Work to pay $124,991.95 for use and occupancy for April through July 2020 and $31,798.44 per month forward. In its motion, the Bryton LLCs asserted Kids' Work was open for business and occupying the premises but refusing to pay rent. Kids' Work filed a motion in opposition, and after a hearing, the court set the matter for trial.

¶ 11 On the first day of trial, the Bryton LLCs called Kevin Bryar, manager of the Bryton LLCs, to testify. Bryar acknowledged on cross-examination that the Bryton LLCs had conveyed the two premises to the Delaware LLCs years earlier. Kids' Work then orally moved to dismiss, arguing for the first time that the Bryton LLCs lacked standing to file an eviction complaint because they conveyed title without reserving rights to future rents. The court adjourned the trial and ordered briefing on standing.

¶ 12    After briefing and argument, the trial court denied Kids' Work's motion to dismiss, finding that Kids' Work waived standing by failing to raise it as an affirmative defense before trial. The court further found that the deeds changed the name of the landlord and that Kids' Work "ratified *** the landlord-tenant relationship" with the Delaware LLCs by paying them monthly rent beginning in December 2014. Moreover, the court found Kids' Work's standing argument was not germane to the question of possession and inappropriate in an eviction case. (Later, the trial court granted the Bryton LLCs' motion to substitute the Delaware LLCs and their management company, Bryton Properties, LLC, as plaintiffs, finding in part that it "does not prejudice the defendant because the defendant was well aware of the name change" and the "the transfer of ownership [as of] December 22 of 2014.")

¶ 13    Kids' Work filed a motion to reconsider, now arguing, for the first time, that the trial court lacked subject-matter jurisdiction because of the Bryton LLCs' purported lack of standing to enforce the leases.

¶ 14    Meanwhile, the Bryton LLCs filed a renewed motion for use and occupancy payments for the 2633 West Addison location. (Kids' Work had vacated the 2620 West Addison property in September 2020.) In support of their renewed motion, the Bryton LLCs argued Kids' Work reopened in May 2020, was operating at 70% capacity by August, and was earning substantial revenues. The Bryton LLCs claimed it obtained this data from a Kids' Work proposed trial exhibit, which also stated that, under Kids' Work's interpretation of the lease agreement, it owed $39,328 in rent for October 2020 and $40,507 for November 2020.

¶ 15    The trial court ordered briefing on the renewed motion for use and occupancy payments and set March 29, 2021, for oral argument on that motion and Kids' Work's motion to reconsider. But, on February 5, 2021, the Bryton LLCs filed a motion asking the trial court to

vacate the briefing schedule and issue an immediate ruling on its renewed motion for use and occupancy payments. They argued, in part, that (i) their motion for use and occupancy payments had been pending more than six months, (ii) Kids' Work already filed a response to their first motion, (iii) the renewed motion was based on Kids' Work's trial exhibit, making additional briefing unnecessary, and (iv) further delay caused prejudice since they were unable to meet their financial obligations while Kids' Work refused to pay rent. Kids' Work responded that it should have an opportunity to file a brief and have an evidentiary hearing on the renewed use and occupancy motion.

¶ 16     After a hearing at which both parties appeared, the trial court granted the Bryton LLCs' motion and ordered Kids' Work to pay $201,356 to "Bryton Properties LLC Rockwell Series FBO Bryton Rockwell LLC" for its use and occupancy of 2633 West Addison from October 2020 through February 2021 and $40,507 per month after that. Those amounts comported with the amounts listed on Kids' Work's proposed trial exhibit. The trial court rejected Kids' Work's argument that it should be permitted to file an additional brief and present evidence before the court ruled on use and occupancy payments. The court stated, "this case has been pending for quite some time. *** [Kids' Work] *** is still operating and *** has not paid the plaintiff any money[.] [It] is not fair. It's not just."

¶ 17     When Kids' Work did not comply with the use and occupancy order, the Bryton LLCs filed a petition for rule to show cause. The trial court granted the petition and ordered Kids' Work's owner, Sarah Cudnik, to appear via Zoom. Cudnik did not appear, and according to her attorney, her noncompliance amounted to a "friendly contempt" "made in good faith for securing [an] appeal" for what he claimed was clear error or "arguably, a matter of first

impression." Kids' Work's attorney suggested the trial court enter a nominal sanction of up to $25 per day and asked for 48 hours to purge the contempt finding.

¶ 18    Rather than a nominal sanction, the trial court held Kids' Work in indirect civil contempt and imposed a $120,000 sanction with 48 hours to purge. In explaining her decision, the trial judge said,

> "you have a client who has not complied with a single court order. You have a client who has not paid a single dime since October of 2020. *** There was not a single reason given as to why the petition for rule to show cause should not be granted. The plaintiff argued that your client received PPE funds. That your client is operating a daycare center. There was not a single objection."

¶ 19    Kids' Work opted not to purge the contempt and filed a notice of appeal under Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016).

¶ 20                                        Analysis

¶ 21                                    Contempt Order

¶ 22    Kids' Work asks us to reverse the contempt order on the basis that the trial court erred in denying Kids' Work's motion to dismiss on standing grounds and denying its motion to reconsider for lack of jurisdiction, which were steps "in the procedural progression leading to the contempt order." *People ex rel. Burris v. Maraviglia*, 264 Ill. App. 3d 392, 398, 400 (1993).

¶ 23    Civil contempt compels compliance with a court order, usually "for the benefit or advantage of another party to the proceeding." *Pryweller v. Pryweller*, 218 Ill. App. 3d 619, 628 (1991); *Felzak v. Hruby*, 226 Ill. 2d 382, 391 (2007). Civil contempt proceedings are "avoidable through obedience," and an alleged contemnor must be able to "purge" a civil contempt charge by complying with the order the court sought to enforce. *In re Marriage of*

*Sharp*, 369 Ill. App. 3d 271, 279 (2006); *Felzak*, 226 Ill. 2d at 391. Contempt occurring out of the presence of the court constitutes indirect contempt. *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 41 (2010). Petitioner has the initial burden to prove by a preponderance of the evidence that the alleged contemnor violated a court order. Then, the alleged contemnor has the burden to show that noncompliance was neither willful nor contumacious and contemnor had a valid excuse for declining to obey the order. *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107-08 (2006). "Whether a party is guilty of indirect civil contempt is a question for the trial court, and its decision will not be disturbed on appeal unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." *Cetera*, 404 Ill. App. 3d at 41 (citing *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984)).

¶ 24　　Kids' Work maintains the trial court should have granted its motion to dismiss the complaint on standing grounds or its motion to reconsider for lack of jurisdiction as a valid excuse for disobeying the court's use and occupancy order. Specifically, Kids' Work argues that the Bryton LLCs conveyed the two properties to the Delaware LLCs without expressly reserving the rights to possession or future rents. This meant that the Bryton LLCs lacked standing to seek unpaid rent. See *Lipschultz v. Robertson*, 407 Ill. 470, 474 (1950) (conveyance of property by warranty deed, in which grantor reserves nothing, conveys lease for property and right to receive unaccrued rentals). Consequently, the trial court erred in denying their motions, which excuses Kids' Work's refusal to comply with the use and occupancy order.

¶ 25　　In reviewing a contempt order, we must examine the propriety of the trial court's order underlying the contempt finding. If that order was invalid, the contempt order must be reversed. See *People ex rel. Madigan v. Stateline Recycling, LLC*, 2020 IL 124417, ¶ 36; *People v. Cole*, 2017 IL 120997, ¶ 18. But the Bryton LLCs assert that the only order the court should assess

is the use and occupancy order, not the orders denying the motion to dismiss or the motion to reconsider, relying on *In re Marriage of Nettleton*, 348 Ill. App. 3d 961 (2004).

¶ 26     *Marriage of Nettleton* concerns an indirect civil contempt finding for refusing to comply with a court order directing the husband to pay temporary maintenance during the dissolution of marriage case. *Id.* at 962. The husband refused to comply in order to appeal the trial court's prior order denying his motion to dismiss for lack of personal jurisdiction and its refusal to include Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) language or certify the issue for appeal. *Marriage of Nettleton*, 348 Ill. App. 3d at 968. The appellate court declined to consider those prior orders on the grounds that it lacked jurisdiction, as the appealed orders "do not bear directly on the question of whether the trial court's finding of contempt was proper." *Id.* at 962-63. We found that Illinois Supreme Court Rule 304(b) (eff. Mar. 8, 2016) states that the only order subject to review is the order finding the husband in contempt, which required a review of the order on which the trial court based the contempt order. *Marriage of Nettleton*, 348 Ill. App. 3d at 968. Thus, the court reviewed just the indirect civil contempt order with which the husband refused to comply, "that is, the *** order compelling respondent to pay temporary maintenance to petitioner." *Id.*

¶ 27     In explaining its rationale, the *Marriage of Nettleton* court stated that a contrary interpretation

"would render meaningless all other rules requiring a final order by allowing a party to circumvent a trial court's refusal to include Rule 304(a) language in its order or its refusal to certify the issue pursuant to Rule 308 merely by refusing to comply with an order by which the party's refusal to comply would result in a contempt order and challenge all other orders with which the party is dissatisfied." *Id.* at 971.

See also *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 53 ("In an appeal from an order of civil contempt, we are confined to review only those matters relevant to the order and not matters outside of it."); *Bearden v. Hamby*, 240 Ill. App. 3d 779, 784 (1992) (permitting review of contempt order but refusing to consider trial court's ruling on party's motion *in limine* as not final and appealable order or under exceptions to "general rule that preliminary orders are not appealable").

¶ 28    Similarly, the trial court's orders denying Kids' Work's motion to dismiss and motion to reconsider did not include Rule 304(a) language or a certified question under Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). So, under Rule 304(b), the only order we review in assessing the finding of indirect civil contempt is the order compelling Kids' Work to pay use and occupancy.

¶ 29    Kids' Work relies on *Weisberger v. Weisberger*, 2011 IL App (1st) 101557, in which the trial court entered summary judgment for plaintiff on her claim that her father, the defendant, improperly converted funds from her living trust. *Id.* ¶ 22. In the summary judgment order, the trial court directed the father to deposit the money he withdrew from the trust with the court. *Id.* ¶ 23. The trial court held him in contempt when he refused to comply or appear. *Id.* ¶ 32. The appellate court agreed with the defendant that it could review the propriety of the trial court's order granting summary judgment because that order " 'ultimately resulted in the finding of contempt.' " *Id.* ¶ 38 (quoting *Maraviglia*, 264 Ill. App. 3d at 400). But here, unlike in *Weisberger*, the order that "ultimately resulted in the finding of contempt" had nothing to do with the denial of the motion to dismiss or the motion to reconsider; Kids' Work's refusal to comply with the order awarding use and occupancy payments resulted in contempt and

sanctions. Thus, this appeal pertains to the propriety of the use and occupancy order, not the two earlier orders.

¶ 30                                    Use and Occupancy Payments Order

¶ 31        Aside from reiterating its standing and subject-matter jurisdiction arguments, Kids' Work contends the trial court (i) should have held a hearing on the motion for use and occupancy payments and (ii) permitted it to file another brief in response to the initial motion for use and occupancy payments. Kids' Work cites no authority requiring the trial court to hold an evidentiary hearing before entering its use and occupancy order. Indeed, this court has upheld use and occupancy orders entered without an evidentiary hearing. See *People ex rel. Department of Transportation v. Cook Development Co.*, 274 Ill. App. 3d 175, 180 (1995). Further, Kids' Work had opportunities to make arguments opposing the motion for use and occupancy payments. It filed a response opposing the initial motion for use and occupancy payments, and the trial court heard argument from both parties in October 2020 and on the renewed motion in March 2021. Thus, Kids' Work had ample opportunity and did present its arguments.

¶ 32        Alternatively, Kids' Work contends that, even if the trial court did not err in ordering use and occupancy payments, it improperly calculated the amount by not considering market rental rates and the impact of the COVID-19 pandemic on the parties' rights and obligations. For support, Kids' Work cites an irrelevant, nearly 110-year-old appellate decision, *Jackson v. Reeter*, 201 Ill. App. 29 (1915), in which the court implied a promise of the occupant to pay rent where the parties never agreed on an amount for rent.

¶ 33                                              Sanctions

¶ 34    Kids' Work asks that, even if the court upholds the use and occupancy payment order, we vacate the contempt order and sanction as a "friendly contempt" in which Kids' Work made a good-faith effort to appeal what it believed to be a clear error or "arguably a matter of first impression."

¶ 35    Exposing oneself to a finding of contempt affords an appropriate means of testing the validity of a court order. *Buckholtz v. MacNeal Hospital*, 313 Ill. App. 3d 521, 527 (2000). Further, a contemnor may refuse to comply with the order in a good-faith effort to secure an appellate interpretation of an issue without direct precedent. *In re Marriage of Rosenbaum-Golden*, 381 Ill. App. 3d 65, 82 (2008).

¶ 36    In *Marriage of Nettleton*, the husband informed his and his wife's counsel that he would not pay temporary maintenance and voluntarily allow indirect civil contempt to challenge the trial court's rulings. *Marriage of Nettleton*, 348 Ill. App. 3d at 964. After the trial court held the respondent in contempt, the appellate court vacated the contempt order, stating, in part, that "it is appropriate to vacate a contempt citation on appeal where a party's refusal to comply with a trial court's order constitutes a good-faith effort to secure an interpretation of an issue without direct precedent." *Id.* at 971; see also *John Doe Corp. 1 v. Huizenga Managers Fund, LLC*, 2021 IL App (2d) 200513 (vacating contempt order where attorney's noncompliance with discovery order based on good-faith effort to secure interpretation of issue).

¶ 37    Similarly, Kids' Work's attorney informed the trial court that his client was seeking a "friendly contempt" to obtain appellate review of what it considered critical errors. Although we disagree with its arguments, our review of the record supports finding that Kids' Work acted in good faith. So we vacate the contempt order and sanction.

¶ 38    Judgment affirmed in part and vacated in part.

*Bryton Properties, LLC, Addison Series v. Kids' Work Chicago, Inc.*,
2022 IL App (1st) 210441

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 20-M1-705090, 20-M1-705091; the Hon. Sondra Denmark, Judge, presiding. |
| **Attorneys for Appellant:** | Kevin M. Lyons and Stephanie E. Kopalski, of Lyons Law Group, LLC, of Downers Grove, for appellant. |
| **Attorneys for Appellee:** | Douglas W. Bax and David J. Strubbe, of Williams Bax & Saltzman, P.C., of Chicago, for appellees. |